# EXHIBIT A

CLERK OF STATE COUR
GWINNETT COUNTY, GEORGI
**19-C-02975-S**
4/24/2019 9:25 AI

## IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

*[signature]*
CLERK OF STATE COUR

**Allycia Poblete**

**Alyx Poblete**

CIVIL ACTION **19-C-02975-S1**
NUMBER:_____

PLAINTIFF

VS.

**Ollie's Bargain Outlet, Inc.**

**Deputy Austin Shippey,**

**in his individual capacity,**

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Jeffrey R. Filipovits
2900 Chamblee Tucker Road, Bldg. 1
Atlanta, GA 30341

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____**24TH**_____ day of _____**APRIL**_____, 20__**19**__.

Richard T. Alexander, Jr.,
Clerk of State Court

By _____
Deputy Clerk

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

SC-1 Rev. 2011

FILED IN OFFICE
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**19-C-02975-S**
**4/24/2019 9:25 AM**



CLERK OF STATE COURT

## STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| ALLYCIA POBLETE,<br>ALYX POBLETE,<br><br><br>Plaintiffs,<br><br>v.<br><br>OLLIE'S BARGAIN OUTLET, INC., and<br>DEPUTY AUSTIN SHIPPEY in his<br>individual capacity,<br><br>Defendants. | Case No.:  **19-C-02975-S1** |

### <u>COMPLAINT FOR DAMAGES</u>

Plaintiffs bring this action against Defendants under Georgia law, 42 U.S.C. § 1983, and 42 U.S.C. § 1981. In support, Plaintiffs offer the following.

### <u>PARTIES</u>

1.    Plaintiff Allycia Poblete is a United States Citizen and a resident of Georgia.

1

2.      Plaintiff Alyx Poblete, Ms. Poblete's son, is a United States Citizen and a resident of Georgia.

3.      Defendant Ollie's Bargain Outlet, Inc. ("Ollie's") is a Pennsylvania corporation whose registered against is Corporation Service Company, located at 40 Technology Parkway South, Suite 300 in Norcross, Georgia.

4.      Defendant Douglas County Sheriff Deputy Austin Shippey ("Defendant Shippey") is sued in his individual capacity.

<u>JURISDICTION AND VENUE</u>

5.      Upon service of process, this Court acquires personal jurisdiction over Ollie's because it is a foreign corporation which transacts business within this States. Personal jurisdiction over Deputy Shippey is proper because he is a resident of this State.

6.      Gwinnett County is the proper venue for this lawsuit under OCGA § 14-2-510(b)(1) because Ollie's registered agent is located within the County.

## FACTS GIVING RISE TO PLAINTIFFS' CLAIMS

7.    On August 16, 2017, Plaintiffs attended the grand opening of an

Ollie's store in Douglasville, GA to meet the special guest, NASCAR

driver Chase Elliott ("Elliott"). Plaintiffs are fans of NASCAR and

were excited to meet one of their favorite drivers.

8.    Plaintiffs were among very few racial minority customers attending

the event.

9.    During the two-hour wait outside of the store, Plaintiffs befriended

several other customers waiting in line.

10.    Plaintiffs were then given numbered tickets to see Elliott and were

allowed inside. While waiting inside for Elliott to arrive, Mr. Poblete

shopped for comic books and Ms. Poblete asked sales associate Raven

George ("Ms. George") to assist her in finding some NASCAR

merchandise for a man she met in line outside of the store.

11.    Plaintiffs were carrying a backpack. A large number of white

customers waiting to meet Elliott were also wearing backpacks while

shopping.

12.    Ms. George seemed to be following Plaintiffs around as they shopped.

3

13.   Sometime later, Officer Riggs of the Douglasville Police Department approached Plaintiffs while they were standing directly in front of Elliott waiting for their number to be called.

14.   Officer Riggs, joined by Ollie's Loss Prevention Manager Nolen Gilmore ("Mr. Gilmore"), ordered Plaintiffs to follow her without providing any explanation.

15.   Mr. Gilmore instructed Officer Riggs to place Plaintiffs in a detention room in the front of the store.

16.   Numerous customers waiting in line to meet Elliott witnessed the police escorting Plaintiffs through the store.

17.   Plaintiffs encountered a second police officer, Officer Barlow, immediately outside of the detention room. Officer Barlow ordered Mr. Poblete to put away his phone.

18.   Plaintiffs were held in the store detention room for approximately thirty-five minutes. They were not given a clear explanation as to why they were being detained. Gilmore told them only that a "random woman" had phoned the police.

4

19.     During that time, Ollie's staff did nothing to confirm or dispel the
        false allegations their employees raised against Plaintiffs.

20.     The police report indicates that Officer Riggs was dispatched to
        Ollie's in response to a 911 call placed by Defendant Shippey, an off-
        duty officer employed by Ollie's.

21.     Defendant Shippey claimed that another employee, Joanna Jackson,
        told him that a black male and female were putting merchandise in
        their bags without paying for it.

22.     When Officer Riggs questioned Jackson, she stated only that Ms.
        George had, "alerted her of a couple whom were acting suspicious."

23.     Ms. George told Officer Riggs that she never saw the couple put
        anything in their bags and never told anyone she saw them do so.

24.     Defendant Shippey did not speak to Ms. George or report the
        suspected theft to any member of the Loss Prevention Team prior to
        calling 911 to report the suspected theft. No one on the Loss
        Prevention Team was even aware of the supposed theft prior to the
        arrival of the police.

5

25.   Approximately 35 minutes after being detained, Plaintiffs were
      released and allowed to get an autograph from Elliot.

26.   Elliott was visibly uncomfortable while signing autographs for them,
      having witnessed their apprehension by the police.

27.   Plaintiffs were planning to ask Elliott to make an appearance at an
      event for a charity that they have been volunteering with for over
      seventeen years. However, they felt too embarrassed and humiliated
      by the incident to make the request.

28.   Ms. Poblete later contacted Ollie's headquarters and spoke to the head
      of loss prevention. She was again informed that a "random woman"
      had called the police. The man further stated,

*Consequences of Plaintiffs' Imprisonment*

29.   Plaintiffs suffered and continue to suffer mental distress as a result of
      this abusive conduct and unlawful detention, including
      embarrassment, nervousness, and humiliation.

30.   Additionally, Plaintiffs suffered damage to their reputations as a result
      of being falsely accused of theft and escorted through the store in

front of customers whom they had befriended and a celebrity guest that they were waiting to meet.

31. Plaintiffs further suffered the loss of an opportunity to obtain a celebrity spokesperson for a charity in which they are actively involved.

## CLAIMS FOR RELIEF

### Count I
### *False Imprisonment under OCGA § 51-7-20*
(By all Plaintiffs against Ollie's)

32. This Count incorporates the factual allegations set forth above.

33. Plaintiffs were unlawfully detained in Ollie's detention room. No reasonable person would have felt free to decline a police officer's directive to enter a store's detention room or felt free to leave the room in the presence of police.

34. A reasonably prudent person could not have believed that Plaintiffs were shoplifting immediately prior to the detention.

35. A reasonably prudent person would have investigated allegations of theft prior to phoning the police.

7

36.  Plaintiffs were detained for an unreasonable amount of time, far
     longer than necessary to investigate whether a theft had occurred.

37.  Plaintiffs were detained in an unreasonable manner.

38.  The actions of Defendant Shippey and other employees of Ollie's
     were the proximate cause of Plaintiffs' damages arising from their
     unlawful detention.

39.  Defendant Shippey and the individual employees referenced in this
     complaint acted at the direction of Ollie's at all times relevant to this
     complaint, and Ollie's controlled the policies, procedures, and rules
     that governed each employee's conduct.

## Count II
### *Tortious Misconduct under Georgia Law*
(By all Plaintiffs against Ollie's)

40.  This Count incorporates the factual allegations set forth above.

41.  Plaintiffs were invitees of Ollie's.

42.  Ollie's owes a duty to the public to protect its invitees from abusive
     language and conduct on the part of its employees.

43.  Ollie's breached that duty when its employees falsely accused
     Plaintiffs of theft and, accompanied by police officers, escorted them

across the store to a security office in front of other customers,

employees, and a celebrity guest.

44.   Ollie's failure to protect Plaintiffs from the abusive conduct of its

employees was the proximate cause of Plaintiffs' damages.

## Count III
### Racial Discrimination under 42 U.S.C. § 1981
(By all Plaintiffs against Ollie's)

45.   This Count incorporates the factual allegations set forth above.

46.   Plaintiffs and Ollie's had a contract to provide Plaintiffs with the

opportunity to meet Elliott.

47.   Plaintiffs were denied the equal enjoyment of all benefits, privileges,

terms, and conditions of this contractual relationship because of racial

discrimination on the part of Ollie's employees.

48.   Plaintiffs were denied the full benefit of a personal interaction with

Elliott free from the embarrassment and discomfort caused by public

accusations of theft.

49.   Defendants treated Plaintiffs, members of a racial minority group,

differently from similarly situated white customers. White customers

who were also shopping while wearing backpacks were not accused of theft. Plaintiffs were accused of theft because of their color.

50. Plaintiffs were treated in a markedly hostile and discriminatory manner that a reasonable person would find objectively unreasonable.

51. Ollie's denied Plaintiffs the full and equal benefit of laws and proceedings for the security of persons and property by instigating a criminal investigation and causing the detainment of Plaintiffs.

52. Ollie's did not initiate a criminal investigation against white customers engaging in the same conduct. Ollie's falsely reported to the police that Plaintiffs were stealing merchandise because of their race.

53. Ollie's had knowledge that its actions may have violated federal law. Ollie's employees attempted to cover up their discriminatory actions by lying to Plaintiffs multiple times about their involvement in phoning the police.

54. Ollie's displayed reckless disregard for Plaintiffs' federally protected rights.

10

55.   The actions of Defendant Shippey and other employees of Ollie's were the proximate cause of Plaintiffs' damages arising from the resulting abusive conduct and detention.

**Count IV**
*Violation of the Fourth Amendment under 42 U.S.C. 1983*
(By all Plaintiffs against Defendant Shippey)

56.   This Count incorporates the factual allegations set forth above.

57.   At all times relevant to this complaint, Defendant Shippey acted under the color of law.

58.   Defendant Shippey supplied false information to Officer Riggs, thereby causing an illegal detention of Plaintiffs.

59.   Without the information supplied by Defendant Shippey, Plaintiffs would not have been detained by Officer Riggs and there would not have been probable cause or reasonable suspicion to detain or arrest Plaintiffs.

60.   Officer Riggs relied upon the information communicated by Defendant Shippey and had no other independent basis to believe that Plaintiffs had committed any crime.

11

61. In supplying information to Officer Riggs and any other law enforcement personnel, Defendant Shippey acted under the color of law.

62. Defendant Shippey's actions were the proximate cause of Plaintiffs' illegal detention and damages arising therefrom.

## Count V
### *Attorney's Fees under 42 U.S.C. § 1988 and OCGA § 13-6-11*
(By all Plaintiffs against all Defendants)

63. This Count incorporates the factual allegations set forth above.

64. Plaintiffs are entitled to recover expenses personally of litigation under OCGA § 13-6-11 because Defendants have acted in bad faith and/or caused Plaintiffs unnecessary trouble and expense.

65. Upon prevailing in this action, Plaintiffs are entitled to recover reasonable attorney's fees under 42 U.S.C. § 1988(b).

## REQUEST FOR RELIEF

WHEREFORE, on the basis of the foregoing, Plaintiffs respectfully pray that this Court:

a) Assume jurisdiction over this action;

b) Hold a trial by jury on all issues so triable;

12

c)   Award nominal, compensatory, punitive, and other damages to each

Plaintiff in an amount determined by the enlightened conscience of

fair and impartial jurors;

d)   Award reasonable attorney's fees, expenses, and costs of litigation

pursuant to 42 U.S.C. § 1988 and other applicable laws;

e)   Award such other and further relief as this Court deems just and

proper.

Respectfully submitted this 24th day of April, 2019.


s/Jeffrey R. Filipovits
Jeffrey R. Filipovits
Georgia Bar No. 825553

FILIPOVITS LAW, PC
2900 Chamblee-Tucker Road
Building 1
Atlanta, GA 30341
678-237-9302
jeff@law.filipovits.com

s/Jennifer Hickey
Jennifer Hickey
Georgia Bar No. 440019

LAW OFFICE OF JENNIFER
HICKEY, LLC
1310 Rockbridge Rd SW Ste G2
Stone Mountain, GA 30087
770-674-8252
jennifer@jenniferhickeylaw.com


13